UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TINA M.J.[1], | ) |
|             Plaintiff, | ) ) ) |
| v. | ) Case No. 2:21-cv-303 ) |
| KILOLO KIJAKAZI,  Commissioner of Social Security, | ) ) ) ) |
|             Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Tina J., on September 28, 2021. For the following reasons, the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, Tina J., filed applications for Disability Insurance Benefits, alleging a disability onset date of August 27, 2019. (Tr. 16). The Disability Determination Bureau denied Tina J.'s applications initially on February 6, 2020, and again upon reconsideration on June 30, 2020. (Tr. 16, 99, 112). Tina J. subsequently filed a timely request for a hearing on August 11, 2020. (Tr. 125). A hearing was held on January 27, 2021, before Administrative Law Judge (ALJ) Paul Jones. (Tr. 33). Vocational Expert (VE) Kathleen Doehla appeared at the hearing. (Tr. 33). The ALJ issued an unfavorable decision on February 9, 2021. (Tr. 13-28). The Appeals Council denied review making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6).

First, the ALJ found that Tina J. met the insured status requirements of the Social

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.

Security Act through December 31, 2024.  (Tr. 18).  At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Tina J. had not engaged in substantial activity August 27, 2019, the alleged onset date.  (Tr. 18).

At step two, the ALJ determined that Tina J. had the severe impairments of obesity, lumbar radiculopathy, and right knee degenerative joint disease.  (Tr. 18).  Tina J. also alleged disability due to tenosynovitis, small hiatal hernia, osteoarthritis, kidney stones, irritable bowel syndrome ("IBS")/colitis, depression, and anxiety.  (Tr. 19).  However, the ALJ indicated that those impairments caused no more than minimal limitations on her ability to engage in basic work activities, and therefore considered them non-severe.  (Tr. 19).  The ALJ also found that Tina J.'s carpal tunnel syndrome, pain, and fibromyalgia were non-medically determinable impairments.  (Tr. 21).

At step three, the ALJ concluded that Tina J. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (Tr. 22).  The ALJ found that no medical evidence indicated diagnostic findings that satisfied any listed impairment.  (Tr. 22).  The ALJ considered whether the severity of Tina J.'s mental impairments met or medically equaled the criteria of Listings 1.02, 1.04, and SSR 19-2p.  (Tr. 22).  The ALJ considered the paragraph B criteria for mental impairments, which required at least one extreme or two marked limitations in a broad area of functioning which include: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself.  (Tr. 20-21).  The ALJ indicated that a marked limitation meant the ability to function independently, appropriately, effectively, and on a sustained basis was seriously limited, while an extreme limitation was the inability to function independently, appropriately, or effectively, and on a sustained basis.  (Tr. 14).  The ALJ found that Tina J. had no limitations in

understanding, remembering, or applying information; no limitations in interacting with others; mild limitations in concentrating, persisting, or maintaining pace; and no limitations in adapting or managing oneself.  (Tr. 20-21).  Tina J.'s mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, therefore, the ALJ determined that the paragraph B. criteria were not satisfied.  (Tr. 21).

After consideration of the entire record, the ALJ then assessed Tina J.'s residual functional capacity (RFC) as follows:

> Claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), but needs a sit/stand option so long as she is not off task greater than 10% of the workday; can never climb ladders, ropes, or scaffolds; only occasionally climb ramps or stairs; and only frequently balance, stoop, kneel, crouch, or crawl.

(Tr. 23).  After considering the evidence, the ALJ found that Tina J.'s medically determinable impairments reasonably could have been expected to cause the alleged symptoms.  (Tr. 23).  However, he found that the Tina J.'s statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (Tr. 23).

At step four, the ALJ found that Tina J. was unable to perform her past relevant work as a surgical technician.  (Tr. 27).  However, the ALJ found jobs that existed in significant numbers in the national economy that Tina J. could have performed.  (Tr. 27-28).  Therefore, the ALJ found that Tina J. was not under a disability, as defined in the Social Security Act, at any time from August 27, 2019, the alleged onset date, through the date of the decision.  (Tr. 28).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are

supported by substantial evidence.  **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported h[is] decision with substantial evidence.").  Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion."  ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting ***Consol. Edison Co. v. NLRB***, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see **Bates***, 736 F.3d at 1098.  A court must affirm an ALJ's decision if the ALJ supported his findings with substantial evidence and if there have been no errors of law.  ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted).  However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." ***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act.  The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  **42 U.S.C. § 423(d)(1)(A)**.  The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520, 416.920**.  The ALJ first considers whether the claimant is presently employed and "doing . . . substantial gainful activity."  **20 C.F.R. §§ 404.1520(b), 416.920(b)**.  If she is, the claimant is not disabled, and the evaluation process is over.  If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that

"significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c)**; see **Williams v. Colvin**, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. §§ 404.1520(e), 416.920(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f)**; see **Biestek v. Berryhill,** 139 S. Ct. 1148 (2019) (upon the disability benefits applicant's request, vocational expert's refusal to provide the private market-survey data underlying her opinion regarding job availability does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

  Tina J. has requested that the court remand this matter for additional proceedings. In her appeal, Tina J. has offered three arguments in favor of remand. Specifically, she alleges that the ALJ erred in failing to substantially support the functional capacity finding and in evaluating her subjective symptoms.

  First, Tina J. concedes that, given recent caselaw, she is not entitled to a new hearing based on her separation of powers and appointments clause argument. Therefore, there is no need

to address the argument further.

Second, Tina J. alleges that the ALJ erred in evaluating her subjective symptoms. An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. ***Shideler v. Astrue***, 688 F.3d 306, 310-11 (7th Cir. 2012). Nevertheless, an ALJ must explain his evaluation with specific reasons that are supported by the record. ***Pepper v. Colvin***, 712 F.3d 351, 367 (7th Cir. 2013). Under SSR 16-3p, 2016 SSR LEXIS 4, an ALJ must assess the claimant's subjective symptoms rather than assessing her "credibility."

The ALJ first must determine whether the claimant has a medically determinable impairment that reasonably could be expected to produce her symptoms. SSR 16-3p, 2016 SSR LEXIS 4, 2016 WL 1119029, at *2. Then, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 16-3p, 2016 SSR LEXIS 4, 2016 WL 1119029, at *2. An individual's statements about the intensity and persistence of the pain may not be disregarded because they are not substantiated by objective medical evidence. SSR 16-3p, 2016 SSR LEXIS 4, 2016 WL 1119029 at *5. In determining the ability of the claimant to perform work-related activities, the ALJ must consider the entire case record, and the decision must contain specific reasons for the finding. SSR 16-3p, 2016 SSR LEXIS 4, 2016 WL 1119029, at *4, 9. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

      (i)      The individual's daily activities;
      (ii)     Location, duration, frequency, and intensity of pain or other symptoms;
      (iii)    Precipitating and aggravating factors;
      (iv)    Type, dosage, effectiveness, and side effects of any medication;
      (v)     Treatment, other than medication, for relief of pain or other symptoms;
      (vi)    Other measures taken to relieve pain or other symptoms;
      (vii)   Other factors concerning functional limitations due to pain or other symptoms.

*See* **20 C.F.R. §404.1529(c)(3).**

The ALJ must justify his assessment with "specific reasons supported by the record." ***Pepper v. Colvin***, 712 F.3d 351, 367 (7th Cir. 2013).  Moreover, "the ALJ must explain h[is] [subjective symptoms evaluation] in such a way that allows [the Court] to determine whether []he reached h[is] decision in a rational manner, logically based on h[is] specific findings and the evidence in the record."  ***Murphy v. Colvin***, 759 F.3d 811, 816 (7th Cir. 2014); *see* SSR 16-30, 2016 SSR LEXIS 4, 2017 WL 5180304, at *10 (Oct. 25, 2017) (The ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.").  "[T]he absence of objective medical corroboration for a complainant's subjective accounts of pain does not permit an ALJ to disregard those accounts." ***Ghiselli v. Colvin***, 837 F.3d 771, 777 (7th Cir. 2016); *see also* ***Moore v. Colvin***, 743 F.3d 1118, 1125 (7th Cir. 2014) ("[T]he ALJ erred in rejecting [the plaintiff]'s testimony on the basis that it cannot be objectively verified with any reasonable degree of certainty.  An ALJ must consider subjective complaints of pain if a claimant has established a medically determined impairment that could reasonably be expected to produce the pain.").

Tina J. alleges that the ALJ improperly relied on her conservative treatment and her failure to seek more aggressive treatment when he analyzed her subjective symptoms.  The ALJ found that Tina J.'s symptoms were inconsistent with the objective evidence because "the record show[ed] only conservative treatment with pain medication, braces, and injections, all of which have provided some pain relief."  (Tr. 25).  The ALJ further found that although Tina J. testified to using a cane, "there [wa]s no evidence in the record to suggest that a cane [wa]s required for

7

balance or ambulation." (Tr. 25).  As discussed in detail below, the ALJ erred by relying on Tina J.'s conservative treatment without exploring why she did not pursue other treatment and in failing to consider how much pain remained despite some relief from her conservative treatment.  The ALJ also failed to properly support his finding that Tina J. did not require her cane for balance or ambulation.

      The medical evidence shows over two years of pain in her foot and knee, as well as her continued use of a cane or walker for ambulation.  Starting in January 2018, Tina J. began complaining of pain in her foot.  (Tr. 291).  In February 2018, her provider noted that a Tailor's bunion created abnormal weight distribution, as well as swelling in her right foot, pain upon palpation, and deformity from the bunion.  (Tr. 297).  On November 5, 2018, she continued to complain of right foot pain with swelling, difficulty walking, and soft tissue edema.  (Tr. 300).  Two weeks later, she still had swelling in her left foot, and the boot she used for pain relief caused worsening pain.  (Tr. 306).  A bone scan showed degenerative changes and bone marrow edema.  (Tr. 306).  Tina J.'s provider noted swelling, periosteal changes, periostitis positive for exquisitely severe pain on her right foot, and splay foot.  (Tr. 307).  By January 7, 2019, her pain was improved by using a walker for ambulation and a bone stimulator for pain relief.  (Tr. 312).  However, by October 2019, she had severe pain in both feet, difficulty walking, and Tailor's bunions on both her feet.  (Tr. 318).  An ultrasound also showed hypoechoic changes to her first metatarsal cuneiform joint and fourth metatarsal.  (Tr. 320).  In November 2019, Tina J. presented with pain in the right foot, spurring on midtarsus, trigger point pain, and right knee pain at six out of ten which increased with weight bearing and walking.  (Tr. 323, 431).  In May and August 2020, the treatment notes indicated that Tina J. continued to have difficulty with walking and used a cane to aid with ambulation.  (Tr. 616, 625).  In January 2021, her pain management doctor opined that she would require a cane as needed when walking or standing.

(Tr. 658).

As stated above, the ALJ did not properly consider Tina J.'s complaints of pain, however, he also failed to consider how Tina J.'s obesity, in combination with her lower back and knee pain, may have substantiated her complaints of pain and need for a cane.  During the relevant period, Tina J. had a BMI ranging from 41 to 47.  (Tr. 24).  The ALJ provided no analysis of the effect obesity had on her impairments or symptoms other than simply noting that he "considered the effect obesity has upon the claimant's ability to perform routine movement and necessary physical activity within the work environment, in accordance with SSR 19-2p."  (Tr. 25).  This general statement does not suggest that the ALJ fully considered the effects Tina J.'s obesity would have on her pain levels or need for a cane.  See **Goins v. Colvin**, 764 F.3d 677, 681 (7th Cir. 2014) (explaining the cumulative effects of obesity and other impairments on walking). Tina J. has foot, knee, and back impairments, all of which may be exacerbated by obesity.  Tina J.'s ability to walk without the aid of an assistive device also could be impacted by these impairments, her obesity, and her pain.

Tina J. makes other arguments regarding the RFC and opinion evidence.  However, because the ALJ erred in analyzing Tina J.'s subjective symptoms and in considering her need for a cane, the court need not address the additional arguments at this time.  The ALJ will have the opportunity to revisit these other issues on remand.

 Based on the foregoing reasons, the decision of the Commissioner is **REMANDED**.

ENTERED this 9th day of November, 2022.

/s/ Andrew P. Rodovich  
United States Magistrate Judge